**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE**

**CIVIL ACTION NO. 12-150-C**

**TRANSTEX COMPOSITE, INC.,**                                  **PLAINTIFF,**

**V.**                   **MEMORANDUM OPINION AND ORDER**

**LAYDON COMPOSITE, LTD.,**                               **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court on the motion of Transtex Composite, Inc.,

for preliminary injunction (R.3, R.16).  Transtex and Laydon Composite, Ltd., are

Canadian corporations and competitors in the trucking industry.  On March 22,

2012, prior to the Louisville Mid-America Trucking Show, the court held an

emergency hearing and entered a temporary restraining order that prevented

Laydon from selling its allegedly infringing trailer skirt products at that show.  After

a second hearing on May 25, 2012, and supplemental briefing, this matter is now

ripe for review.  Though Transtex has shown that it is likely to prove infringement

of its patents, Laydon has successfully raised a substantial question as to the

validity of at least one of those patents by submitting proof that the Patent and

Trademark Office has recently rejected all of the claims in that patent.  Because

that substantial question weighs strongly against the likelihood of Transtex's

success on the merits of its claims, the court will deny Transtex's motion for

preliminary injunction.

1

Transtex developed a truck skirt made of a thermoplastic composite material, with a resilient strut, which provides the skirt with elasticity preventing deformation of the skirts due to wear.  Transtex holds U.S. Patent No. 7,938,475 ('475 Patent) entitled "Aerodynamic Skirt Wheel Interface," and U.S. Patent No. 7,942,468 ('468 Patent) entitled "Aerodynamic Skirt Securing Mechanism." Laydon manufactures competing products, including a Hybrid Skirt, Curve Skirt and Classic Skirt.  Transtex accuses Laydon's Hybrid skirt of infringing claims 1, 2, 4 and 9 of the '475 Patent and also accuses Laydon's Hybrid Skirt and Curve Skirt of infringing claims 1, 2, 7, and 8 of the '468 Patent.  Laydon's Classic Skirt, U.S. Patent No. 7,578,541 ('541 Patent), is not accused of infringement primarily because it does not utilize resilient struts.

To determine whether infringement of the patents occurred, the court must examine the patent claims and compare the properly construed claims to the allegedly infringing device.  Transtex's '475 Patent includes the following relevant claims:

Claim 1:  An aerodynamic skirt adapted to be mounted to a trailer to manage the air flow around the trailer, the aerodynamic skirt comprising: a skirt panel including a front portion and a rear portion, the rear portion defining a shape substantially corresponding to a shape of a wheel of the trailer, wherein the front portion and the rear portions are forming a longitudinal angle thereof when installed on the trailer in an aerodynamic configuration and wherein the skirt panel is adapted to be secured to the trailer with a plurality of resilient struts adapted to bend from an aerodynamic configuration when contacting an object.

Claim 2: The aerodynamic skirt of claim 1, wherein, when the aerodynamic skirt is mounted to the trailer, a rearwardmost end of the skirt panel is disposed adjacent to the wheel of the road trailer.

2

Claim 4: The aerodynamic skirt of claim 1, wherein, the skirt panel is a plurality of skirt panel modules adapted to cooperate there between.

Claim 9: The aerodynamic skirt of claim 1, wherein, the skirt panel is made of composite material.

Laydon advertises its Hybrid Skirt as an aerodynamic skirt that is to be mounted to a trailer to improve aerodynamic performance of the trailer.  It comes in one or three pieces for easy shipping and is made of a lightweight, impact-resistant, injection molded plastic.

The '468 Patent includes the following relevant claims:

Claim 1:  An aerodynamic skirt adapted to be substantially longitudinally mounted to a trailer, the aerodynamic skirt comprising: a skirt panel including a front portion and a rear portion, the front portion being adapted to be mounted toward a forward portion of the trailer and the rear portion being adapted to be mounted toward a rear portion of the trailer in an aerodynamic configuration, the skirt panel being adapted to move away from the aerodynamic configuration when contacting a foreign object and to self-recover the aerodynamic configuration thereafter, the skirt panel being resiliently secured to the trailer with a plurality of resilient struts including an intermediate portion; a trailer connecting portion at a first end thereof; and a skirt connecting portion at a second end thereof, the intermediate portion being adapted to sustain an elastic deformation allowing the intermediate portion to bend without breaking when the skirt panel moves away from the aerodynamic configuration and to self-recover the original shape when returning to the aerodynamic configuration, the trailer connecting portion being configured to be secured to the trailer with a securing mechanism.

Claim 2: The aerodynamic skirt of claim 1, wherein the securing mechanism includes a pair of clamps to secure the trailer connecting portion to a frame member of the trailer.

Claim 7: The securing mechanism of claim 1, wherein the securing mechanism allows bending of the resilient strut when the resilient strut bears a load applied thereto.

Claim 8:  The aerodynamic skirt of claim 1, wherein the securing mechanism allows a longitudinal adjustment of the trailer securing

3

portion along the frame member of the trailer prior to firmly securing the securing mechanism to the frame member.

Laydon advertises both its Hybrid and Curve Skirts as aerodynamic skirts, made of composite materials, that are substantially longitudinally mounted to a trailer to improve aerodynamic performance of the trailer with a "flexible spring" that "will not break."

In evaluating a motion for injunctive relief, the court considers (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm if the injunction is not issued; (3) the balance of hardships between the parties; and (4) the public interest. *See Winters v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). To show that it is likely to succeed on the merits, Transtex "must demonstrate that it will likely prove infringement of one or more claims of the patents-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer." *AstraZeneca L.P. v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). Transtex is likely to prove that Laydon's products infringe upon its own patented products, but Laydon has raised a substantial question of those patents' validity.

First, Transtex is likely to prove that Laydon's products infringe upon its patents. Assessing the likelihood of infringement requires its own two-step analysis. First, the court must determine the meaning and scope of the asserted claims through claim construction. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d

4

1331, 1339 (Fed. Cir. 2003).  The court must then compare the properly construed claims to the allegedly infringing device.  *Id*.

To develop the correct legal understanding of the asserted patent claims in step one, the Court looks to publicly available sources that show what a person of skill in the art would have understood the disputed claim language to mean. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  Those sources include the words of the claims, the patent's specification, and the patent's prosecution history, as well as extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.  *Id.* Upon review of these sources, the Court adopts the following constructions for the disputed terms and in doing so makes the following conclusions of law.

The disputed terms in these patents are "longitudinal angle" ('475), "aerodynamic configuration" ('468), and "resilient strut" ('468 and '475).  The court construes "longitudinal angle" to mean that the trailer skirt is oriented along the long side of the truck trailer, "aerodynamic configuration" to mean a configuration that improves airflow around the trailer, and "resilient strut" to mean a strut that has the ability to sustain significant deformation and return to its original shape.  These constructions correspond to the terms' plain and ordinary meanings and are consistent with their usage in the context of the patents; in other words, each term has a readily apparent unique meaning.  Moreover, Laydon's '541 Patent uses "longitudinal" and "aerodynamic" in a similar manner.  The '541 Patent describes the attachment of a trailer skirt to the "longitudinally-extending

5

edge of [a] tractor trailer rig" in a manner that "reduce[s] the aerodynamic drag of said trailer."  Accordingly, the court determines that Transtex's constructions for these disputed claim terms would be readily understandable to a person of skill in the art.

With respect to Laydon's construction of the terms as being limited by the use of the adjectives "curved" and "angled," Transtex did not limit the scope of its claims through the patent's specifications, prosecution history, and related claims. Laydon argues that aerodynamic skirts are referred to as "angled" in the '475 Patent specifications and prosecution history.  However, the claims of the patent will not be read restrictively unless the patentee expressly manifests exclusion or restriction.  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).  Here, Transtex did not expressly manifest restriction and even stated in the last paragraph of its '475 Patent that its claims were not be limited or read restrictively when specifications describe embodiments.

Laydon also argues that Transtex limited the scope of its claims during patent prosecution.  It refers to prosecution history where Transtex argued that the skirt was aerodynamic because the skirt was curved at the front.  Moreover, Laydon argues that inventor Mathieu Boivin's affidavit touting the "shape and structure of the aerodynamic skirt" ties its "curved" and "angled" interpretation to the disputed claim terms.  Nonetheless, courts are to narrow the scope of claims for statements made during prosecution only when the patentee "limit[ed] the meaning of a claim term by making a clear and unmistakable disavowal of scope."

6

*Purdue Pharma L.P. v. Endo Pharm., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). In this case, Boivin's affidavit was not a clear and unmistakable disavowal of scope. It did not refer to specific claim language and did not specifically refer to the claimed invention. Consequently, Transtex did not limit the scope of its claims during prosecution.

Laydon's proposed constructions also violate the claim differentiation doctrine. The "presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315 (citing *Liebel-Flarsheim Co.*, 358 F.3d at 910). That claim 7 of the '475 Patent refers to curves does not mean that claim 1 of that patent also speaks of curves. Such a construction would render dependent claims like claim 7 superfluous. Therefore, Laydon's constructions do not comply with claim differentiation.

Furthermore, "resilient strut" should not be construed as a means-plus-function claim term. A patent may describe a particular element by what it does rather than how it is made. 35 U.S.C. § 112 (2006). Laydon argues that the section regarding the "resilient strut" describes a function or result and sets forth no specific structure. Therefore, it argues that the construction of "resilient strut" should be limited to the corresponding structure described in the specification and equivalents thereof. However, the section does not contain the word "means," which creates a rebuttable presumption that 35 U.S.C. § 112 does not apply. *Phillips*, 415 F.3d at 1311 (citing *Personalized Media Commc'ns, L.L.C. v. Int'l*

7

*Trade Comm'n*, 161 F.3d 696, 703-04 (Fed. Cir. 1998)).  Furthermore, "means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function." *Id.* (citing *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880-81 (Fed. Cir. 2000)).  Here, the "resilient strut" is not a purely functional limitation.  It is a structure that would be known to those of ordinary skill in the art.  Thus, "resilient strut" is not a means-plus-function term in this case and its construction should not be limited to the corresponding structure disclosed in the specification and its equivalents.

Laydon's Hybrid and Curve Skirts employ designs and methods that are similar to those described in Transtex's '468 and '475 Patents regarding the shape of the skirts, the resilient struts on which they are mounted, and the method of attaching those struts to a trailer.  Accordingly, Transtex is likely to prove that Laydon's products infringe those patents.

Having determined that Transtex is likely to show that Laydon's Hybrid and Curve Skirts infringe its patents, the court must decide whether Transtex can show that the patents will likely withstand any challenges at trial.  *See Titan Tire*, 566 F.3d at 1376.  If Laydon raises a "substantial question" concerning validity, enforceability, or infringement then no preliminary injunction should issue. *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997). Though Transtex's issued patents are presumed valid, *see* 35 U.S.C. § 282, Laydon may defeat the injunction on grounds of invalidity if it meets its burden to

establish a substantial question of invalidity.  *See Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008).

Laydon successfully raises substantial question as to the validity of the '475 Patent.  This substantial question arises not from Laydon's own patented product, but from the recent actions of the U.S. Patent and Trademark Office ("PTO").  Laydon's '541 Patent – the Classic Skirt – does not include a resilient strut and was before the patent examiner during the prosecution of the patents in this suit; therefore, the PTO already considered and rejected this prior art.  Indeed, the '541 Patent is cited on the face of the patents-in-suit.  The '541 Patent discloses that the strut is made of thermoplastic composite material.  The court saw a sample of the Classic trailer skirt at the May 24, 2012, hearing and also viewed a video which demonstrated the resiliency of this strut.  There is an audible "crack" sound on the video, and Laydon's counsel confirmed that "it does sound as though it breaks."  *See* R. 32 at 76 (Transcript of Hearing).  Thus, the Laydon Classic trailer skirt is not resilient in that it cannot sustain significant deformation and return to its original shape.

However, the PTO, after an *ex parte* re-examination proceeding, recently rejected claims 1-20 of Transtex's '475 Patent as obvious under 35 U.S.C. § 103(a) in light of prior art.  *See* R. 44-1, Communication of Office Action in Ex Parte Reexamination, Aug. 31, 2012.  In doing so, the PTO relied, among other things, on prior patents that described struts that "may be returned to their original form, preferably by hand," *id.* at 7, and struts supporting an airfoil that are "made

9

of a resilient material so they may collapse when the deflector is impacted by an object (such as contact with a loading dock) and allow the element [] to resume [its] original shape upon removal of the contact." *Id*. at 11.  Thus, the PTO found that Transtex's claims regarding its resilient struts, as well as the remainder of the claims in the '475 Patent, were obvious.  Though the PTO has not evaluated the '468 Patent, its grounds for rejecting the claims in the '475 Patent would apply equally well to the claims in the '468 Patent, particularly those at issue in this case.  The fact that the PTO has rejected the entirety of the claims in Transtex's patent raises a substantial question as to the patent's validity sufficient to justify the denial of a preliminary injunction.

This reexamination and rejection by the PTO is not conclusive; Transtex is permitted to submit amendments to its claims to distinguish them from the prior art, *see id*. at 16, and Transtex may choose to undertake further review and appeal proceedings.  Transtex may ultimately prevail on the issue of patent validity. However, this court must consider the current status of PTO proceedings in determining whether a preliminary injunction is appropriate.  *See Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008).  The PTO's action has raised a substantial question as to the validity of the '475 and '468 Patents, and that substantial question precludes the issuance of a preliminary injunction.  *See Titan Tire*, 566 F.3d at 1379.

The remaining factors the court considers in determining whether to issue a preliminary injunction weigh in Transtex's favor but do not outweigh Transtex's

failure to show a likelihood of success on the merits.  If Transtex's patents are valid, it is being irreparably harmed by Laydon's infringement of the '475 and '468 Patents.  The trailer truck skirt market is a unique marketplace where the winner of the first sale enjoys considerable advantage for sales for an entire fleet of trucks. In addition, because Laydon has no assets in the United States, monetary damages may not be sufficient to compensate Transtex.  *See Robert Bosch, LLC v. Pylon Manuf'rg Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011).

The court must also balance the harm sustained by the moving party from the denial of an injunction with the harm that would occur to the non-moving party if the injunction were granted.  *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988).  Here, the balance of hardships weighs in favor of Transtex.  Laydon is not prohibited from selling its non-infringing product, the Classic trailer skirt.  The harm to Transtex, explained above, outweighs that imposed upon Laydon by the issuance of an injunction.

Finally, "[t]he public interest is best served by enforcing patents that are likely valid and infringed."  *Abbott Labs v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).  Due to the substantial question raised as to the validity of Transtex's patent, this factor does not weigh in either party's favor.

Accordingly,

**IT IS ORDERED** that Transtex's motion for preliminary injunction (R. 3, 16) is **DENIED**.

11

Signed on October 30, 2012

Jennifer B. Coffman, Judge
United States District Court